STATE OF NEBRASKA, APPELLEE, V. ALFRED D. COCA,
APPELLANT.
341 N.W.2d 606

Filed December 23, 1983. No. 83-296.

Deborah K. Long, and Toney J. Redman, for appellant.

Paul L. Douglas, Attorney General, and Sharon M. Lindgren, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

A jury determined, and the trial court adjudged, that defendant-appellant, Alfred D. Coca, was guilty of knowingly and intentionally possessing more than 1 pound of marijuana. Following an enhancement proceeding, Coca was also adjudged to be an habitual criminal. He was thereafter sentenced to imprisonment for a term of 10 years. In this appeal Coca argues, among other things, that the trial court improperly received certain evidence. We agree with that argument, reverse the trial court's judgments, and remand for a new trial.

On November 8, 1981, Lincoln police detective

Mark Lantis observed a green 1979 Mercury automobile, bearing Colorado license plates, parked on the side of a gravel road near 1st and Old Cheney Road, a rural area outside the city of Lincoln but within Lancaster County. He approached the automobile and asked the lone occupant, who was seated in the front passenger seat, to identify herself. She produced a Kansas driver's license identifying her as Jeannine Hupe. After being unable to check the automobile's registration certificate and license plates with the Lincoln Police Department, Lantis searched the surrounding area. Finding no one, he left, parked about a half mile away, and kept the automobile under observation. After a few minutes Lantis observed a man approach the automobile and enter it by the driver's side door. The automobile was then driven away.

Lantis followed the Mercury and eventually stopped it. He asked the driver for identification and a driver's license. The driver identified himself as Coca and admitted he had no license to drive, as it had been suspended in Colorado. Lantis issued Coca a citation and asked his permission to search the automobile. Coca allowed Lantis to search the trunk but refused to allow a search of the passenger compartment without a warrant. In the trunk Lantis found a paper bag containing several syringes, a spoon with a sooty bottom and a powdery residue in the bowl, several foil-wrapped cubes, a bag containing a single hand-rolled cigarette, and a Polaroid photograph of a marijuana plant. Coca denied that the items were his and claimed that his girl friend was a diabetic. Coca was then taken to the police station, where Lantis determined that there were needle marks on Coca's arms. He was then placed in jail.

Thereafter, a warrant was issued to search the vehicle. A quantity of marijuana was found in a plastic garbage bag on the floor behind the driver's seat. A smaller bag of marijuana was found on the floor

behind the front passenger seat. Lantis also found a box of plastic sandwich bags; another photograph; two spoons, both of which were burnt on the bottom and one of which contained a powdery residue; a bag of cellophane-wrapped cubes; some foil-wrapped cubes; some small white packets; and some white tablets.

A state-employed chemist later determined that the cubes, the tablets, and the white packets contained no controlled substances. The spoons had traces of phenmetrazine, a controlled substance prescribed as a weight reduction aid. The chemist determined that the total weight of marijuana seized from the automobile weighed 1 pound 15 ounces.

As a result of the November 8, 1981, arrest, Coca was charged with knowingly and intentionally possessing more than 1 pound of marijuana in violation of Neb. Rev. Stat. § 28-416(5) (Cum. Supp. 1982). He was also charged with being an habitual criminal under the provisions of Neb. Rev. Stat. § 29-2221 (Reissue 1979).

On September 16, 1981, about 2 months prior to his November 1981 arrest, Coca and Hupe had been discovered harvesting marijuana at another Lincoln location. Coca fled upon police discovery of this activity; however, he was apprehended the next day. Hupe was arrested at the scene, at which time the same 1979 Mercury automobile which was observed by Lantis on November 8, 1981, was seized and searched. That search resulted in the confiscation of a quantity of marijuana. Coca pled guilty to charges arising from the September harvesting.

At Coca's trial concerning the November 1981 incident, the State elicited testimony and introduced other evidence concerning the September crime. The State also introduced the nonmarijuana-related physical evidence seized from the automobile pursuant to the November arrest of the defendant. Coca argues, inter alia, that the trial court should have excluded all the foregoing evidence.

The applicable "evidence of other crimes" statute is Neb. Rev. Stat. § 27-404(2) (Reissue 1979), which provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The rule is one of relevance. *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981). Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Neb. Rev. Stat. § 27-401 (Reissue 1979); *State v. Bromwich*, 213 Neb. 827, 331 N.W.2d 537 (1983).

As a general proposition, evidence of crimes committed by the accused other than that with which he is charged is not admissible. *State v. Evans*, 212 Neb. 476, 323 N.W.2d 106 (1982); *State v. Franklin*, 194 Neb. 630, 234 N.W.2d 610 (1975). However, it is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the crime with which the accused is charged, even though such facts and circumstances may prove or tend to prove that he committed other crimes. *State v. Evans, supra*; *State v. Scott*, 211 Neb. 237, 318 N.W.2d 94 (1982); *State v. Dandridge*, 209 Neb. 885, 312 N.W.2d 286 (1981); *State v. Ellis, supra.* Evidence of other crimes is admissible where there are unique, almost "signature-like" similarities between them and the offense charged, or the evidence is otherwise so related in time, place, and circumstances to the offense charged as to have substantial probative value in determining the guilt of the accused. *State v. Scott, supra*; *State v. Dandridge, supra.*

Balancing the need for "other-crimes" evidence against the possible prejudice to the accused is

within the discretion of the trial court. *State v. Scott, supra.*

In order to determine whether the trial court abused its discretion, we must keep in mind the constituent elements of the crime with which Coca was charged. They are set forth in § 28-416(5) as (1) knowingly or intentionally, (2) possessing, (3) marijuana, (4) which weighed more than 1 pound.

There is no doubt that marijuana weighing more than 1 pound was found in the automobile driven by Coca. The inquiry, therefore, becomes whether the evidence in controversy so bears upon the remaining elements as to justify its admission under the rules discussed earlier in this opinion.

As to the element of knowledge, this court has said: "Proof of guilty knowledge may be made by evidence of acts, declarations, or conduct of the accused from which the inference may be fairly drawn that he knew of the existence and nature of the narcotics at the place where they were found. People v. Mack, 12 Ill. 2d 151, 145 N.E.2d 609. But mere presence at a place where a narcotic drug is found is not sufficient. State v. Hunt, 91 Ariz. 149, 370 P.2d 642; Carrell v. State, 90 Ariz. 411, 368 P.2d 649. As stated by the Arizona court in State v. Hunt, *supra,* joint possession cannot be established by the fact that the defendant is or has been in the company of one who has a narcotic drug on his person. An additional independent factor linking the defendant with the narcotic must be shown. See, also, Spataro v. State (Fla. App.), 179 So.2d 873; Evans v. United States, 257 F.2d 121." *State v. Faircloth,* 181 Neb. 333, 337, 148 N.W.2d 187, 190 (1967).

Intentionally means "willfully" or "purposely," and not accidentally or involuntarily. *Sall v. State,* 157 Neb. 688, 61 N.W.2d 256 (1953).

To possess a narcotic drug means to have actual control, care, and management of, and not a passing control, fleeting and shadowy in its nature. *State v. Williams,* 211 Neb. 650, 319 N.W.2d 748 (1982).

The task further resolves itself into an analysis of whether the evidence was properly received as tending to establish any one or more of those remaining elements by proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. § 27-404(2).

In criminal law, motive is that which leads or tempts the mind to indulge in a criminal act. *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981). It does not seem to us it can be said that Coca's involvement in a September marijuana harvesting scheme tends to establish his motive to possess marijuana in November.

Likewise, the evidence is irrelevant to show Coca's opportunity to possess marijuana at the later date, since all the marijuana found in the car in September was confiscated by the police at that time.

We cannot infer that because Coca intended to harvest different marijuana in September, he intended to possess the marijuana which was found in the automobile in November.

Neither can it be said the September crime tends to show how Coca prepared to possess marijuana in November. In fact, if the prior harvesting were in preparation for the later possession, the prior act proved fruitless. Nor is there any apparent plan or scheme common to the September and November acts. The harvesting incident does not show that the November possession was the end result of a scheme which included the September harvesting.

Does the fact that he was involved in a prior harvesting scheme make it more likely he knew that the marijuana was behind the seat of the vehicle in November? It does not; the important question as to knowledge in the November incident is whether Coca knew the marijuana was in the car, not whether he knew what marijuana was.

There is no problem with Coca's identity in this case. Neither are there any issues as to whether there was any mistake or accident.

We must therefore conclude that the evidence of the September crime has no relevancy to the question of whether Coca knowingly or intentionally possessed more than 1 pound of marijuana in November. The jury was asked to infer from the evidence that since Coca was involved with marijuana previously, he criminally possessed it at a later time. Evidence of a prior crime cannot be used for such a purpose. Coca's conviction must therefore be reversed and a new trial granted to him.

Having reached that conclusion, it is not necessary to consider Coca's other arguments, except to observe that the nonmarijuana-related physical evidence seized from the automobile was also irrelevant to the offense with which the defendant was charged and should not have been received.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE, J., concurs in the result.